UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KEITH J. MAGILL, DAVID BLUMSACK, and, JACOB BLUMSACK, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | No. 1:19-cv-11208-ADB |
| ELYSIAN GLOBAL CORPORATION, LEO AMERI, JESSE BRANDENBURG, AND NADINE DOMINIK, | * * * * | |
| Defendants. | * * * | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiffs Keith Magill ("Magill"), David Blumsack ("David"), and Jacob Blumsack ("Jacob," and, with David, "Blumsacks") (collectively, "Plaintiffs") bring claims against Elysian Global Corporation ("Elysian"), Leo Ameri ("Ameri"), Jesse Brandenburg ("Brandenburg"), and Nadine Dominik ("Dominik") (collectively, "Defendants") for breach of contract (Count I), quantum meruit (Count II), unjust enrichment (Count III), fraudulent inducement (Count IV), accounts stated (Count V), piercing the corporate veil (Count VI), and misclassification of an employee under the Fair Labor Standards Act ("FLSA") (Count VII). See [ECF No. 1 ("Compl.")]. Presently before the Court is Defendants' motion to dismiss for lack of jurisdiction. [ECF No. 7]. For the reasons explained below, the motion to dismiss, [ECF No. 7], is <u>GRANTED</u>.

## I. FACTS AS ALLEGED

This is an action for allegedly withheld wages. For purposes of this motion, the facts are viewed in the light most favorable to Plaintiffs and are drawn from the complaint, [Compl.], and relevant referred documents.[1] Elysian is a Belize corporation, [Compl. ¶ 9], focused on creating an e-commerce platform that uses cryptocurrency, [ECF No. 7-1 at 1]. Between April and July 2018, Elysian had its Initial Coin Offering ("ICO"), [Compl. ¶ 77], in which it claimed to raise $7 million, [id. ¶ 79]. It does not have an office in New Jersey or Massachusetts. [Id. ¶ 9]. Ameri, Elysian's CEO, "resides out of the country although his last known address is in Los Angeles, California." [Id. ¶ 10]. Both Brandenburg, Elysian's CFO, and Dominik, Elysian's "Corporate Secretary," are domiciled in Arizona. [Id. ¶¶ 11–12].

Magill, who is domiciled in New Jersey, [Compl. ¶ 6], began working for Elysian in business development in October 2017, [id. ¶ 18]. According to Defendants, Magill's work consisted of creating designs for use in Elysian's social media outreach and helping to develop a business plan to target early investors. [ECF No. 7-1 at 2]. Defendants claim that they met with Magill twice, both times in Los Angeles, California. [Id. at 2]. Magill agreed that he would not be compensated for his work until Elysian's ICO, at which point Defendants promised he would be paid $200,000 in cryptocurrency.[2] [Compl. ¶¶ 19, 31]. The agreement was not reduced to writing until after he left the company in July 2018. [Id. ¶ 20]. Magill estimates that he

---

[1] "A district court may . . . consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

[2] Specifically, Magill understood the agreement to include that he would be paid $200,000 in Ethereum, or "Ether," "a form of cryptocurrency similar to Bitcoin," that is used on the Ethereum blockchain network. [Compl. ¶ 31 n.1].

requested a formal contract between five and ten times from October 2017 to September 2018. [Id. ¶ 23]. When Magill requested a formal contract, Ameri would become hostile and claim that it was not a good time for the contract to be drafted. [Id. ¶ 22].

On September 7, 2018, Magill received the formal contract, titled the Token Compensation Agreement ("the Agreement"). [Compl. ¶ 24]. Though the Agreement included different terms than what the parties had previously agreed to, [id. ¶ 25], including a mandatory arbitration agreement, [ECF No. 10 at 5], Magill "felt compelled to sign" it, [id. ¶ 31]. The Agreement provided that Magill would be paid in three installments, the first of which, in the amount of $12,500 in Elysian Tokens, was made on the same day that Magill and Dominik signed the agreement. [Id. ¶¶ 26–27, 32]. Magill was to be paid an additional $12,500, also in Elysian Tokens, on October 2, 2018 (the "October Payment"). [Id. ¶ 28]. The final unscheduled payment would cover the remaining $175,000 (the "Final Payment"). [Id. ¶ 29].

Defendants never made the October Payment or the Final Payment. [Compl. ¶ 30]. When asked about payment, they claimed that they were facing issues with legality and needed verification from their legal team, as the company was relocating from Belize to Singapore. [Id. ¶¶ 41–42]. Both Ameri and Brandenburg told Magill that they themselves had not received any salary or bonus prior to the time that Magill left the company in July 2018. [Id. ¶ 43]. These conversations all took place via Elysian's Slack account, which Plaintiffs claim Defendants have since deleted. [Id. ¶¶ 44–45]. Defendants aver that Magill's work was unsatisfactory and that they therefore did not have to pay him under the Agreement. [ECF No. 7-1 at 3].

The Blumsacks, twin siblings who are domiciled in Amesbury, Massachusetts, [Compl. ¶¶ 7–8], worked for Elysian as independent contractors from "early 2018 until the fall of 2018," [id. ¶ 4], and worked with Magill "on occasion," [id. ¶ 35]. According to Defendants, the

Blumsacks' work consisted of social media consulting and advertising. [ECF No. 7-1 at 3]. Both signed contracts with Elysian, which specified that they were hired as independent contractors.[3] [Compl. ¶ 36]. Although not mentioned in the contract, the Blumsacks assert that they were each told that, following Elysian's ICO, they would be paid $10,000 for eight months' work. [Id. ¶¶ 37–38]. Defendants claim that the Blumsacks never provided any acceptable services and that their work actually got Elysian banned from a cryptocurrency product website. [ECF No. 7-1 at 3].

When the Blumsacks requested payment, Ameri and Brandenburg accused them of committing fraud and threatened them with criminal liability. [Compl. ¶ 48]. Defendants believed that the Blumsacks were actually one person who was attempting to commit fraud by acting as two people. [Id. ¶ 50].[4] On one occasion, Brandenburg told the Blumsacks that, "Right now there is significant evidence that points to Jacob being a fictitious person. . . . . At least if you tell us the truth, you can walk away from the project peacefully without hearing from our legal team." [Id. ¶ 50]. Brandenburg then requested proof of Jacob's existence, "aside from a photo that could have been edited on photoshop," and refused to provide payment until such verification. [Id. ¶ 57]. After the parties could not schedule a video conference to verify Jacob's identity, Ameri ended their business relationship. [Id. ¶¶ 57–62]. Neither of the Blumsacks was ever paid. [Id. ¶ 39].

---

[3] Plaintiffs argue that they received no consideration and that the contracts are therefore void. [Compl. ¶ 36].

[4] Though Plaintiffs claim that Defendants said that the Blumsacks were in fact only one person and therefore only entitled to $10,000, the issue is moot as the Blumsacks were never paid any amount. [Compl. ¶ 49].

## II.   PROCEDURAL HISTORY

Plaintiffs filed their complaint on May 30, 2019. [Compl.]. On August 29, 2019, Defendants moved to dismiss the complaint, arguing that the Court lacks subject matter jurisdiction and personal jurisdiction over the Defendants. [ECF No. 7]. Plaintiffs opposed on September 12, 2019. [ECF No. 10].

## III.   JURISDICTION

Plaintiffs aver that the Court has diversity jurisdiction under 28 U.S.C. § 1332 because all of the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000. [Compl. ¶ 13]. Magill argues that the Court would also have federal question jurisdiction over his FLSA claim pursuant to 28 U.S.C. § 1331. [Id. ¶ 14]. The Defendants concede that the Court has original jurisdiction over Magill's claims. [ECF No. 8 at 8; ECF No. 10 at 10–11]. The Court finds that it has original subject matter jurisdiction over Magill's claims, both under diversity jurisdiction, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331.

The parties agree that, because the Blumsacks only bring claims under state law and each seeks only $10,000, the Court lacks original subject matter jurisdiction over their claims. [ECF No. 8 at 6–8; ECF No. 10 at 11–12]. Plaintiffs argue that the Court may exercise supplemental jurisdiction over their state-law claims. [ECF No. 10 at 11–12]. When a federal claim is pending before a court, that court has supplemental jurisdiction over "all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. "[C]laims are part of the same 'case or controversy' for the purposes of section 1367(a) if they 'derive from a common nucleus of operative fact' or 'are such that [they] would ordinarily be expected to [be] tr[ied] in one judicial proceeding." Allstate

Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC, 730 F.3d 67, 72 (1st Cir. 2013) (internal citations and ellipses omitted).  Defendants make no argument contesting supplemental jurisdiction.  See generally [ECF No. 8].

With regards to personal jurisdiction, Plaintiffs maintain that the Court has specific personal jurisdiction over Defendants because of their business relationship with the Blumsacks. [ECF No. 10 at 14 ("Defendants are subject to jurisdiction in Massachusetts as they contracted with the Blumsacks, who are located in this District.")].  The parties agree that the Court does not have personal jurisdiction over Defendants based solely on Magill's claim because the underlying conduct did not involve any contact with Massachusetts.  [ECF No. 8 at 8; ECF No. 10 at 15].  It is further uncontested that the Court lacks general personal jurisdiction over Defendants.  See [ECF No. 8 at 9; ECF No. 10 at 14].  Therefore, Plaintiffs must demonstrate that the Court may exercise specific personal jurisdiction over the case because the cause of action arises from Defendants' business with the Blumsacks in Massachusetts such that Defendants could "reasonably anticipate being haled into court" here.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The motion to dismiss before the Court thus raises a single jurisdictional issue: whether a Court may exercise personal jurisdiction based on a supplemental claim, when the Court otherwise lacks personal jurisdiction over the claim that provides original jurisdiction.

### A.     Standard of Review

Plaintiffs bear the burden of establishing that the Court has jurisdiction over defendants. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . , the 'prima facie' standard governs its determination."

6

United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the "prima facie" standard, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Bluetarp Fin., Inc. v. Matrix Constr. Co., Inc., 709 F.3d 72, 79 (1st Cir. 2013) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). "The plaintiff's properly documented evidentiary proffers are accepted as true for purposes of making the prima facie showing, and [the Court] construe[s] these proffers in a light most favorable to plaintiff's jurisdictional claim." Id.

The Court considers "the facts from the pleadings and whatever supplemental findings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). Plaintiffs may not, however, establish the Court's personal jurisdiction over defendants with "unsupported allegations in [the] pleadings," and are instead "obliged to adduce evidence of specific facts." Platten v. H.G. Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). The Court will also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Daynard, 290 F.3d at 51.

**B.    Discussion**

Plaintiffs argue that the Court has subject matter jurisdiction, as it has original jurisdiction over Magill's claims and can exercise supplemental jurisdiction over the Blumsacks' claims, [ECF No. 10 at 11–12], and further that it has personal jurisdiction over Defendants because of their contacts with the Blumsacks, [id. at 14–17]. In other words, they assert that the Court has subject matter jurisdiction because of Magill and personal jurisdiction because of the

7

Blumsacks. "Without the [Blumsacks'] claims, there would be no personal jurisdiction over the defendant[s]. And without [Magill's] claims, there would be no subject matter jurisdiction over the [Blumsacks'] claims." Leachman Cattle of Colo., LLC v. Am. Simmental Assoc., 66 F. Supp. 1327, 1339 (D. Colo. 2014).

"[T]he pendent personal jurisdiction doctrine in both the diversity and federal question contexts is best articulated as follows: a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks personal jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court . . . ." D'Jamoos v. Atlas Aircraft Center, Inc., 669 F. Supp. 2d 167, 175 (D.N.H. 2009) (quoting 4A C.A. Wright & M.K. Miller, Federal Practice and Procedure § 1069.7 (2d ed. 1995)). In D'Jamoos v. Atlas Aircraft Center, Inc., for example, the court found that it could exercise pendent personal jurisdiction over a Dutch company to consider claims of both a defective service manual, for which the court had specific jurisdiction, and a defective aircraft, for which the court lacked specific jurisdiction, because both claims arose from the same plane crash. Id. The doctrine therefore allows a district court to consider claims over which it would generally lack personal jurisdiction, so long as the court already has a claim that provides both personal and subject matter jurisdiction.

In this case, however, Plaintiffs seek to use one claim to establish personal jurisdiction and a different claim to establish subject matter jurisdiction. "The 'reverse' application of the pendent jurisdiction rule would mean that a federal district court has both subject matter jurisdiction and personal jurisdiction as to all claims arising out of the same set of operative facts so long as the court has original subject matter jurisdiction over one of the claims and personal jurisdiction over the defendant as to any of the other claims." Poor Boy Productions v. Fogerty,

8

No. 3:14-cv-00633, 2015 WL 5057221, at * 8 (D. Nev. Aug. 26, 2015). Other courts have declined to exercise their discretion to consider such claims. See, e.g. Ortiz v. Perry, No. 17-cv-00489, 2018 WL 10127035, at * 11 n.10 (N.D. Ok. May 11, 2018) (finding that the court lacked jurisdiction "because the only potential basis for personal jurisdiction [wa]s a pendent state-law claim"); Poor Boy Productions, 2015 WL 5057221, at * 8 ("Although the Court has subject matter jurisdiction over the federal claims in this case, exercising jurisdiction over Defendant purely because there is personal jurisdiction over him as to supplemental claims over which the Court does not have original jurisdiction would be an unreasonably broad reading of § 1367 flying in the face of the presumption against federal jurisdiction."); Leachman Cattle of Colo., 66 F. Supp. 3d at 1339 ("[W]here neither set of claims could survive on its own, it feels fundamentally unfair to rely on each set of independently deficient claims to subject the defendant[s] to jurisdiction in Colorado.").

Because the Court finds that there is no personal jurisdiction over Defendants pursuant to the only claims over which it has original jurisdiction, Magill's claims, the Court must dismiss these claims and the Blumsacks' supplemental state law actions. "Insofar as the claims could arguably be maintained through a crisscrossing web of pendent subject matter and personal jurisdiction, the Court declines to exercise such discretion." Id. at 1340.[5]

---

[5] Having determined that the Court lacks personal jurisdiction over Defendants, it will not consider the merits of their arguments concerning the mandatory arbitration agreement. Even if the Court wished to consider the merits, Defendants have not attached, quoted, or cited to the arbitration agreement at issue. See generally [ECF No. 8].

## IV. CONCLUSION

Accordingly, Defendants' motion to dismiss for lack of jurisdiction, [ECF No. 7], is GRANTED.[6]

**SO ORDERED.**

February 11, 2020                                             /s/ Allison D. Burroughs
                                                              ALLISON D. BURROUGHS
                                                              U.S. DISTRICT JUDGE

---

[6] Because the Court grants the Defendants' motion to dismiss, the motion for a hearing, [ECF No. 9], is DENIED as moot.